Case number 20-5189 Hugh Campbell McKinney appellant v. John E. Whitley in his official capacity as acting secretary of the United States Army Mr. Watkins for the appellant Mr. Mehard for the appellate Good morning counsel Mr. Watkins please proceed when you're ready Good morning may it please the court Hugh in a Humvee close to an improvised explosive device that exploded on a bridge in the city of Turkuk when he suffered his traumatic brain injury at that moment the army had no systematic approach for addressing traumatic brain injuries of the type that he received which was from the just didn't have a procedure in place its regulations did not directly address how to handle purple heart awards in such circumstances for McKinney his circumstances were that he was present at this IED blast and then just two weeks later his second tour of so he returned to the United States after just about two weeks went to a base in the state of Washington where he completed a post-deployment health assessment that's a military record that noted some of the symptoms that he had as a result of the blast he then was demobilized and remained in the reserves but was sent home to Idaho six months after the health assessment the military conducts a health reassessment and on the reassessment document also a military medical record that health reassessment notes extensive problems with his health as a result of that traumatic brain injury that he received in October of 2005 unfortunately for McKinney not only was the purple heart award not clearly defined in army's regulations for traumatic brain injuries that were mild to moderate meaning not penetrating with shrapnel through his skull but also the congress passed legislation just after his health assessment and his health reassessment requiring the military to do a traumatic brain injury screening and then that legislation required the screening to be implemented within six months of enactment so he missed by on the order of the year the change in the form that was the form used for post-deployment health assessment that specifically asked questions did you lose consciousness were you subjected to any blasts what were they the forms became much more detailed after he left his time in Iraq and after his health assessments and so the evidence is from a time when the army didn't collect the information in the most rigorous fashion in addition McKinney when he was in Iraq was in charge of 45 men he was at a fire base and just to orient the court in terms of the terminology that's used a fire base is a small installation it's roughly the size of a little league baseball diamond it's not a big area and in fact there were 110 men assigned to that fire base where he was located but he had 45 men under his charge and so when he went out on what was called a mounted patrol and that simply means that there was a a a gun that was mounted and it was an automated fashion so that somebody could scan for enemies or insurgents from the vehicle that they were in he was in a mounted patrol with three v's with some Iraqi police and so he had men under his charge that whole patrol was his responsibility so when he completed his affidavit the day after the the IED blast occurred he focused on the blast which is exactly what you're supposed to do with the type of document that he was completing the military record that he was asked to complete that affidavit was to detail the blast itself it was not to detail any injury to himself and in addition because he had 45 men under his charge he was focused on taking care of his men and not addressing any ill effects that he might have been receiving and in fact was receiving was feeling from the blast itself so the the issue before the court is whether the army board for correction of military records had has properly denied his request for award of the purple heart which is not a discretionary award it's an award that is made based on the regulation itself which has effectively three that's the service members medical record that the severity of the wound was such that it would have required treatment by a medical officer if one had been available to provide treatment and finally the records were made a matter of official army medical records or army records i can tell you that there was no medic with his patrol in the field he was on a fire base and there was no medical officer on his fire base if he wanted medical treatment after that ied blast he would have had to engage a group of other service members to travel with him to protect him because remember he's in a effectively a war zone in iraq it was not a safe place he would have had to have traveled to what's called the forward operating base which as i understand it about 4 000 service members at it so he was at a fire base with 110 it was essentially in the field and then in addition if he wanted medical treatment by a medical officer there is effectively a field hospital at a forward operating base he would have had to have traveled miles away from his fire base in order to get that treatment in the last two weeks of his deployment when there was a change of command occurring and when he was in charge of 45 men including their demobilization including their return back to the united states and getting the next group uh who was taking over at the fire base ready for their responsibilities and so um mr walkins can i can i ask you a question about our standard of review here um or the standards under which we review this um you've argued that we should apply the substantial evidence test here but isn't the board's decision an informal adjudication so don't we apply arbitrary and capricious review to this case it should be an arbitrary and capricious review under the apa i agree your honor the uh the the trick here is that the circuit precedent says that unusual deference is given to the army board in its decision making but the apa says says nothing about applying unusual deference to any decision of an agency and so there's a disconnect between at least uh from my perspective from a balanced perspective between the circuit precedent and the apa i see that i'm i'm into my rebuttal time but i'm happy to continue answering questions yeah i have one one and we'll give you a rebuttal time but i have a question follow-up question for you which is um the second prong of the the regulation deals with treatment by a medical officer or medical professional in some situations yes and and for that i take it the principal um evidence that you have in support of satisfying that prong is dr de leon's um statement that's in the record well actually it goes back it goes beyond dr de leon's statement because there is extensive recounting of all of the different treatments he received upon return to the united states among the medical records that are in the appendix so there were a number of different doctors one important one at the va also was dr burns who did an extensive write-up and an evaluation of his medical conditions and also linked his stroke to blast in iraq and so the only record that directly links the october 2005 blast to his stroke is the record from dr de leon but i would say that there is great sort of recounting of the different therapies that he had to receive back in the united states because of all of his symptoms he was having memory loss he had problems with his stability and balance his his problems were quite extensive and continue to this day i mean even today his wife has to button his shirt for him he's unable to do that right and on dr de leon's thank you for that and um on dr de leon's let me just make sure i completely understand the situation that he he was not a medical officer at the time that he rendered the opinion that's in the record but your argument has been that it doesn't matter because he was a medical officer at one time right and so the usefulness of his examination is contingent on agreement with you that as long as he was a medical officer at one point that's enough even if he wasn't a medical officer at the time that the document was prepared i think we have even more leeway with with his medical opinion because the purple heart regulation allows a medical professional who was not in the military to render the opinion as long as a medical officer in the army makes it a record in his medical records so really any civilian physician could have given the to translate that into a medical file that is a military record so to make it a record and to make his treatment records part of his military file and so it really doesn't it to me it's more important that dr de leon had a sense of what it was like to be in iraq being a medical officer who served there during the time that mckinney was there he understood what it was like to be in the field around very dangerous situations having to act without worrying about one's personal health but trying to just keep 45 men safe and so from his perspective i think it was important that he was able to generate an opinion after the fact but it really doesn't matter whether he was a medical officer giving the opinion or not because the purple heart regulation as it has evolved over time now permits that opinion to be used by the army as long as somebody in order to counsel yes uh isn't there indication in the record that his uh medical situation or injury is a result of continuity of uh experiences rather than attributable to the 2005 explosion so i'm glad you asked that question i'd like to address it so the only medical opinion in the record including the medical opinion that the army board um relied upon the only opinion that actually addresses the circumstances surrounding each of the three blasts that mckinney was exposed to is dr de leon's opinion and that opinion specifically links the october 2005 blast to a loss of consciousness dr burns did not address whether it was cumulative the army medical opinion by dr sullivan relied upon by the army board did not address the evidence that was in the record that was dr de leon's opinion that it was not a cumulative effect but in fact it was from a single blast so he was subjected to multiple blasts but the only one that the traumatic brain injury was the last one that he received in october 2005 just before he left active duty in iraq okay let me make sure uh we have no further questions for you at this point and we will give you some rebuttal time we don't want to hear from the government at this point thank you mr watkins thank you your honor mr mahart thank you and good morning your honors and may it please the court special assistant u.s attorney sean mahart on behalf of appellee on detail to the u.s attorney's office from the u.s army judge advocate general corps the issue presented here is whether the army board for the correction of military records violated the apa and denying mckinney's request for the purple heart sergeant first class mckinney does not meet the requirements for the purple heart has established an army regulation 600-8-22 as the awards and decoration branch noted in its june 19 2014 letter to mckinney this determination in no way reflects negatively on your honorable service to our nation and that is correct mckinney has honorably served his nation but the issue here is whether the iad blast he was exposed to on 9 october 2005 meets the regulatory requirements for the purple heart does not the purple heart requires a wound injury or death resulting from enemy or hostile act the wound or injury must have required treatment not merely examination by a medical officer and the medical treatment must have been made a matter of the soldier's medical records relevant to this case mild traumatic brain injury severe enough to cause either loss of consciousness or restriction from full duty is a clear example of a qualifying injury for award of the purple heart the court should affirm the army board for correction of military records decision so long as it comports with the administrative procedure acts deferential standard and in fact in this case an unusually deferential application of the arbitrary and capricious standard applies as this is a case that requires military judgment and military expertise here the board's decision evidences reasoned decision making as the board examined the and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made my friend on the other side argues that it's immaterial that dr de leon is no longer a medical officer but it is not uh dr de leon uh is not a medical officer as contemplated by the army regulation and his 2013 statement is insufficient to meet that requirement under the army regulation so can i ask you um just uh on that one there's nothing in the army board's decision itself that makes reference to dr de leon's statement right so in in terms of whether he was not a medical officer in terms of whether he was not a medical officer at the relevant time we have that from your brief but the decision itself that we're reviewing doesn't say anything about that your honor i would point to the consideration of evidence section of the board's decision does mention dr de leon's 2013 statement in the discussion section it is not mentioned although i would point to um the third paragraph of the discussion section your honor where the board discusses um dr sullivan the army's doctors uh opinion and his conclusion that mckinney's tbi appears to be a result of cumulative effect as opposed to being caused by a specific event my friend on the other side argues that uh he didn't dr de leon statement is the only opinion in the record to address what occurred on 9 october 2005 but dr sullivan did address that he looked at uh the 9 october 2005 incident and whether it could be connected to mckinney's tbi he concluded otherwise and the board's reliance on that decision and opinion is appropriate and entitled to uh deference under um the circuit's precedent so the way you're looking at it is that you paragraph three recounts dr sullivan's statement the facts in uh the background section indicates that de leon's statement was taken into account and so the way to read the army board's decision is that under paragraph three that incorporates a consideration of de leon's opinion and the board ended up relying on sullivan for the proposition that notwithstanding dr de leon's statement that the ultimate conclusion of the board was that in agreement with dr sullivan that the injuries were a result of multiple episodes as opposed to just the october 2005 one is that the way you're looking at it that's that's correct your honor that is your honor and i would also point to um the fourth paragraph uh where the board you know articulates that uh they looked at the evidence provided from the veterans affairs doctors which uh mckinney points to uh in his brief so it wasn't simply just reliance on um dr sullivan's opinion it reliance in the sense that yes that's what they credited but they did evaluate the evidence in the record your honor the board's opening point in its decision is there is no evidence in the available record and neither the applicant nor his counsel submitted sufficient evidence showing he was treated by medical personnel for an injury wound he received as a result of hostile action on or near 9 october 2005 and the purple heart regulation requires that the applicant connect the alleged injury or wound to a specific incident and as dr sullivan's opinion makes clear and the third paragraph of the board decision makes clear mckinney is unable to connect the 9 october 2005 incident to his traumatic brain injury furthermore and also dispositive excuse me counsel uh if he were if medical treatment was required even though it was not available that would satisfy the purple heart wouldn't it your honor only if a medical officer provided a statement saying that medical treatment was required yes and mckinney has your state your statement was medical treatment was necessary but that's not quite so if it was required but was unavailable and was subsequently certified to be that then he would be entitled right to medical treatment if it was substantively certified that he required medical treatment that's correct your honor by a medical officer right then yes it it would meet the standard under the regulation yes your honor but in this case mckinney has failed to provide a statement by a medical officer that he required and dr sullivan reviewed the available medical evidence in the record and did not reach that conclusion it's also worth noting that dr de leon's 2013 statement in and of itself even assuming he was a medical officer which is pelly's position he is not it wouldn't meet it he used the word expected instead of required and he also failed to describe what treatment would meet would be required in that instance and not any type of treatment suffices under the purple heart regulation it needs to be a specific type of treatment and his opinion is silent as to what that treatment would require as a result it's inherently speculative to go back in time and try to determine what would have occurred following the incident and then that it would then meet the standard under the purple heart regulation um finally your honor the purple heart regulation requires that the medical records um be a part of the so i think we lost the signal is that is everybody else seeing that as well yep all right let's just give a couple seconds to see if it comes back in is that your fault that's to be determined by anyone else can we have an investigation i think we've lost the it looks like we've lost the signal um i think mr maher was on his final point so why don't we why don't we go to rebuttal uh mr watkins we'll give you your two minutes for rebuttal actually let's hold off mr walkins why don't you wait just for a second let's see if we can get mr maher back on just so at least he can sure let's give him just a second so we can go back to well I'm definitely prepared to do that I just want to make sure that's so that he can Mr. Mehard can hear what Mr. Watkins says so I'm not doing the argument without him present your point I understand why don't we do this one and can we can we stop the argument for now and see if we can get him on in the next minute or two I have called Mr. Mehard and he's in the process of coming back with a phone connection okay all right then let's wait for that thank you you're welcome good morning your honors this is Special Assistant U.S. Attorney Shawn Mehard I apologize I was experiencing some technical difficulties I have called in on my cell phone good we can hear you so I think you still have about a minute left so you're welcome to wrap up if you'd like thank you thank you your honor in sum your honor the decision of the Army Board for the Correction of Military Records evidences reasoned decision making and under the unusually deferential application the arbitrary and capricious standard entitled to the board's opinion in this case the board meets this meets the applicable standard of review accordingly appellee asked that the district court be affirmed thank you thank you Mr. Mehard Mr. Watkins will now give you your two minutes for rebuttal thank you your honors first I want to respond to opposing counsel's statement that the treatment must have occurred on or near the time of the incident the the regulation doesn't say that this has been a theme that has appeared in in the Army Board's opinion and has propagated afterward and I can't find any evidence that it needs to be close in time it's the nature of a traumatic brain injury is such that you don't necessarily know that you have one the instant it occurs and even if you do have one as a service member particularly McKinney he was not medically trained so how was he supposed to know that his symptoms were evidence of a traumatic brain injury there was nobody a medic or a medical officer with him to even ask the basics to ask him questions related to orientation to person place time and situation right if you're injured and somebody arrives with an ambulance they're going to ask you very basic questions you know what day it is you know what time there was nobody there to ask that instead they were worried about taking fire and whether whether they could secure the area and so this was not a situation where immediate treatment was necessary in fact for a mild to moderate traumatic brain injury this is what is called in medical terms a a progressive a disease process so the effects of the traumatic brain injury will be felt for the rest of McKinney's life some people get worse symptoms than others his have been particularly severe he doesn't drink he doesn't smoke he's Mormon yet he suffered a stroke with no family history of strokes and it was tied directly to the he had his entire mouth rebuilt because when he arrived back his teeth his molars were split in half right down the middle all the way down to the root counsel he has counsel he has received benefits from the VA from the Army because of his disabilities isn't that correct he does get he's 100% permanent and total disabled by the VA so it's a Veterans Administration benefit disability benefit that's right and not an Army benefit he did apply to the Army for for traumatic injury insurance that's the subject of a separate problem because that was denied as well okay thank you thank you Mr. Watkins thank you to both counsel we'll take this may I say something before of course would you uh without regard to the merit to the case would you express my view that thank uh Sergeant McKinney for his service that will mean a tremendous amount to him that you said that I was in frequent communication with him over the weekend and this is very meaningful to him that uh that a court is so immediately call uh when the argument's over and let him know thank you thank you thank you your honor for your service uh uh thank you Mr. Watkins and please extend that on behalf of all of us thanks Judge Silberman and we'll take this argument under submission
judges: Srinivasan, Rao, Silberman